NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

THE LAKE HAMILTON LAKESHORE )
OWNERS ASSOCIATION, INC., a Florida )
not-for-profit corporation, on behalf of its )
members, )
)
     Appellant, )
)
v. )    Case No. 2D14-5611
)
WAYNE L. NEIDLINGER, d/b/a Captain )
Fred's Airboat Nature Tours, and LAKE )
HAMILTON COMMERCE & STORAGE )
CENTER, INC., a Florida corporation, )
)
    Appellees. )
                              )

Opinion filed December 30, 2015.

Appeal from the Circuit Court for Polk
County; John Radabaugh, Judge.

Douglas A. Lockwood, III, and Matthew W.
Prisco of Straughn & Turner, P.A., Winter
Haven, for Appellant.

Daniel P. Rooney of Law Office of Allan L.
Casey, Winter Haven, for Appellee
Wayne L. Neidlinger.

No appearance for Lake Hamilton
Commerce & Storage Center, Inc.

CASANUEVA, Judge.

       The Lake Hamilton Lakeshore Owner's Association, Inc., ("the

Association") appeals an order dismissing with prejudice its two-count complaint against

Wayne L. Neidlinger, d/b/a Captain Fred's Airboat Nature Tours ("Captain Fred's"), and Lake Hamilton Commerce & Storage Center, Inc.[1] In its complaint, the Association asked the trial court to declare Captain Fred's airboat activities a nuisance and to enter an injunction prohibiting such airboat activities on Lake Hamilton. The trial court dismissed the complaint based on its finding that state law preempts what can be considered a nuisance pertaining to airboat noise. We conclude that the trial court erred in dismissing the complaint and reverse.

## I. FACTUAL BACKGROUND

The Association alleged in its complaint that Captain Fred's operates commercial airboat tours on Lake Hamilton that generate noise levels up to 100-110 dB, which noise levels are extreme and "create an unreasonable loss of enjoyment for numerous residents around Lake Hamilton, as evidenced by a petition of over 380 persons situated on or near Lake Hamilton who requested that the Lake Hamilton Town Council enact an ordinance which would prohibit said use." The complaint noted that such noise levels would exceed a noise level ordinance if Polk County were to adopt section 327.65, Florida Statutes (2013).

The complaint alleged that Captain Fred's two airboats are operated up to ten hours per day every day of the week for several months during Captain Fred's peak season. The complaint further alleged that about eighty percent of Lake Hamilton's shoreline is zoned residential and that Captain Fred's airboats travel within 1500 feet or less of over 200 homes on every trip.

---

[1] A default was entered against Lake Hamilton Commerce & Storage Center, Inc., after it failed to respond to the complaint.

Captain Fred's moved to dismiss the complaint alleging, among other things, that an activity which the law authorizes cannot be a nuisance. The trial court agreed, finding that the activity of Captain Fred's is authorized by law, and therefore, it cannot be a nuisance. This ruling was incorrect.

## II. PRIVATE CAUSE OF ACTION FOR NUISANCE

An "activity can constitute a judicially abatable nuisance notwithstanding full compliance with either legislative mandate or administrative rule." State ex rel. Shevin v. Tampa Elec. Co., 291 So. 2d 45, 48 (Fla. 2d DCA 1974). In Shevin, the appellant sought injunctive relief against Tampa Electric Company (TECO) alleging that TECO's generating plants released discharges containing sulfur dioxide, sulfur trioxide, and other deleterious and noxious chemicals. Id. at 46. This court held that there was "nothing for an agency to decide, and the primary jurisdiction doctrine is inapplicable since the legal effect of the complained of activity, together with an appropriate remedy, is peculiarly a judicial matter." Id. at 48. The Shevin court reasoned that if the complained of conditions exist, the determination regarding whether they constitute a nuisance is a matter of law, and any question regarding whether the conditions comply with an agency's regulations is irrelevant to the court's determination of a nuisance. Id. Therefore, to the extent that the trial court also ruled that it did not have primary jurisdiction in the matter, this ruling was incorrect. If the complained of conditions exist, the trial court was required to determine if they constitute a nuisance as a matter of law, and compliance with an agency's regulations is irrelevant to the court's determination of a nuisance. See id.

This court reaffirmed the Shevin holding in Erwin v. Alvarez, 752 So. 2d 1261, 1262 (Fla. 2d DCA 2000). In Erwin, the appellants alleged that the noise created

by the appellees' chickens constituted a nuisance.  Id.  Relying on Shevin, this court

reversed the trial court's ruling that, as long as the appellees limit the number of

chickens to be in compliance with the county ordinance, there was no private nuisance.

Id.; see also Barfield Instrument Corp. v. Sea View Indus., Inc., 102 So. 2d 740, 741

(Fla. 3d DCA 1958) ("An unlawful use is not essential to the existence of an actionable

nuisance.").

The First District has also applied this reasoning in a case involving a

rowing center, noting that

> mere compliance with the zoning ordinance will not, in and of
> itself, absolve a property owner from any claim of nuisance.
> A court examining a claim of nuisance must focus not only
> upon legality, but also upon reasonableness of the use, "as
> *such use affects the public and private rights of others*" and
> "*must of necessity be determined from the facts and
> circumstances of particular cases as they arise.*"  Cason v.
> Fla. Power Co., 74 Fla. 1, 76 So. 535, 536 (1917) (emphasis
> added).

Saadeh v. Stanton Rowing Found., Inc., 912 So. 2d 28, 32 (Fla. 1st DCA 2005).

Consequently, the airboat activity of Captain Fred's may constitute a

judicially recognized nuisance even if such activity is authorized by statute, regulation,

or ordinance.

We note that the trial court cited only one law establishing restrictions on

the operation of airboats.  Polk County Ordinance 96-14 provides that "[n]o person shall

operate an airboat between the hours of 10:00 p.m. and 7:00 a.m. Sunday through

Thursday and 12:00 midnight and 6:00 a.m. Friday and Saturday, Memorial Day,

Independence Day, and Labor Day."  The other relevant portion of the ordinance

provides:

> No person shall operate an airboat above an idle speed
> within five hundred (500) feet of a residence. . . .  The

- 4 -

distance setback from residences in this subsection shall not apply during the hours of 8:00 a.m. and 5:00 p.m. Monday through Saturday to the use of airboats by commercial operators of airboat tours or rides holding a valid occupational license for such purposes as of March 5, 1996, for purposes of gaining ingress and egress to their base of operations or to residences constructed on Lake Hamilton after the effective date of this ordinance.

Since the setback provision does not apply to certain homes on Lake Hamilton, the ordinance appears to allow the operators of commercial airboats to operate as close to the homes as they desire. Further, the airboats are allowed to operate from 7 a.m. until 10 p.m. from Sunday to Thursday and from 6 a.m. until midnight every Friday, Saturday, Memorial Day, Independence Day, and Labor Day. As this court held in Erwin, 752 So. 2d at 1262, compliance with this county ordinance does not mean that the activity cannot constitute a judicially abatable nuisance. "A lawful business may be conducted in such an unreasonable manner, that as a result thereof, a neighbor is deprived of the free use or enjoyment of his adjoining property." Barfield Instrument Corp., 102 So. 2d at 741.

### III. PREEMPTION

In its order dismissing the Association's complaint, the trial court refers to the preemption doctrine in the following ruling: "State law preempts the area of what can be a nuisance by way of airboat noise pollution . . . ." Because the six-page order only mentions preemption in this one sentence and does not discuss how the preemption doctrine would apply to this case, we cannot discern whether the trial court intended to simply rule, as discussed above, that the activity of Captain Fred's cannot be a nuisance because it is authorized by Florida's statutory law and certain administrative rules or whether the trial court applied the doctrine of preemption. Regardless, we conclude that

the order's reference to preemption need not muddy the legal water in this case, because the preemption doctrine does not bar the Association's claim for nuisance.

Because the trial court's order is silent as to which form of preemption operates to preclude the instant action, we will review both forms of preemption recognized in this state. "Florida law recognizes two types of preemption: express and implied. Express preemption requires a specific legislative statement; it cannot be implied or inferred." <u>Sarasota All. For Fair Elections, Inc. v. Browning</u>, 28 So. 3d 880, 886 (Fla. 2010). To meet the demands of express preemption, the statute is required to contain "specific language of preemption directed to the particular subject at issue." <u>Santa Rosa Cty. v. Gulf Power Co.</u>, 635 So. 2d 96, 101 (Fla. 1st DCA 1994). "Express preemption of a field by the legislature must be accomplished by clear language stating that intent." <u>Phantom of Clearwater, Inc. v. Pinellas Cty.</u>, 894 So. 2d 1011, 1018 (Fla. 2d DCA 2005) (citing <u>Santa Rosa Cty.</u>, 635 So. 2d at 101).

The order of dismissal referenced the following statutes: sections 327.60(2), 327.65, and 327.04, Florida Statutes. Also referenced was Florida Administrative Code Rule 68D-23.101. We conclude that the statutes and ordinance cited in the trial court's order fail to contain the necessary specific language that expressly preempts a private cause of action for nuisance. In <u>Phantom</u>, 894 So. 2d at 1018, this court identified specific legislative language that has been held to establish express preemption: "It is the legislative intent to give exclusive jurisdiction in all matters set forth in this chapter . . . ." <u>See also</u> <u>Santa Rosa Cty.</u>, 635 So. 2d at 101. Neither this express language nor similar language appears in the statutes relied upon by the trial court.

We next address the second type of preemption: implied preemption. Preemption is implied "when 'the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature.' " Browning, 28 So. 3d at 886 (quoting Phantom, 894 So. 2d at 1019). As stated in Browning, "[i]mplied preemption is found where the state legislative scheme of regulation is pervasive and the local legislation would present the danger of conflict with that pervasive regulatory scheme." Id. (citing Tribune Co. v. Cannella, 458 So. 2d 1075, 1077 (Fla. 1984)).

Implied preemption is judicially imposed and reflects a decision by the judiciary to fill a void left by the failure of the legislature to provide an explicit legislative directive of preemption. Phantom, 894 So. 2d at 1019. "When courts create preemption by implication, the preempted field is usually a narrowly defined field, 'limited to the specific area where the Legislature has expressed [its] will to be the sole regulator.' " Id. (quoting Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So. 2d 826, 831 (Fla. 1st DCA 1996)).

From the statutes cited by the trial court, an intent to occupy the field of nuisance law cannot be discerned. What is identifiable is a legislative intent to prohibit local governments from discriminating against airboats. The legislative scheme does not reflect a strong public policy rationale to deprive a citizen of their right to avail themselves of a remedy for nuisance.[2]

_____

[2]We treat the effect of these statutes on the nuisance claims using the term "preemption" because that is how the trial court treated them. It is not clear to us, however, that classic preemption principles provide the appropriate analytical framework. Generally understood, preemption deals with the constitutional allocation of power between state and local governments and is implicated when a state statute regulates an activity that is also regulated by a county or municipal government. See generally Sarasota Alliance For Fair Elections, Inc. v. Browning, 28 So. 3d 880, 886-87

- 7 -

## IV. CONCLUSION

Accordingly, we reverse the order dismissing this case because the trial court incorrectly found that compliance with the county ordinance absolved Captain Fred's from any private claim of nuisance.

Reversed and remanded for further proceedings.

WALLACE and SALARIO, JJ., Concur.

---

(Fla. 2010) (outlining the nature of express and implied preemption). State law preempts county or municipal regulation when a state statute expressly says that it does or by implication occupies the entire field. Id. at 886. This case, however, involves the effect of certain state statutes on the availability of the recognized common law claim of nuisance, not the exercise of regulatory power by a county or municipal government, and this is not a case where a local regulation is an ingredient of the common law claim.